## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>GENERAL WIRELESS OPERATONS INC. DBA RADIOSHACK, *et al.*,[1]<br><br>　　　　Debtors. | Chapter 11<br><br>Case No. 17-10506 BLS<br><br>(Jointly Administered) |
| CALVIN HOSKISON and ERIC VANDERLIP, on behalf of themselves and all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>GENERAL WIRELESS OPERATONS INC. DBA RADIOSHACK;  DENE ROGERS, President and Chief Executive Officer of General Wireless, Inc. and/or General Wireless Operations, Inc.; ROBERT LAVAN, Chairman of General Wireless Inc. and/or General Wireless Operations, Inc.; and DOES 1 through 40; inclusive,<br><br>　　　　Defendants. | CLASS ACTION COMPLAINT<br><br>[JURY DEMAND]<br><br>Adv. Pro. No. |

---

[1]　　　The Debtors are the following eighteen entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  RS Legacy Corporation (f/k/a RadioShack Corporation) (7710); Atlantic Retail Ventures, Inc. (6816); Ignition L.P. (3231); ITC Services, Inc. (1930); Merchandising Support Services, Inc. (4887); RS Legacy Customer Service LLC (f/k/a RadioShack Customer Service LLC) (8866); RS Legacy Global Sourcing Corporation (f/k/a RadioShack Global Sourcing Corporation) (0233); RS Legacy Global Sourcing Limited Partnership (f/k/a RadioShack Global Sourcing Limited Partnership) (8723); RS Legacy Global Sourcing, Inc. (f/k/a RadioShack Global Sourcing, Inc. (3960); RS Ig Holdings Incorporated (8924); RSIgnite, LLC (0543); SCK, Inc. (9220); RS Legacy Finance Corporation (f/k/a Tandy Finance Corporation) (5470); RS Legacy Holdings, Inc. (f/k/a Tandy Holdings, Inc.) (1789); RS Legacy International Corporation (f/k/a Tandy International Corporation) (9940); TE Electronics LP (9965); Trade and Save LLC (3850); and TRS Quality, Inc. (5417).  The address of each of the Debtors is 300 RadioShack Circle, Fort Worth, Texas 76102.

CALVIN HOSKISON and ERIC VANDERLIP ("Plaintiffs"), by and through their undersigned

counsel, on behalf of themselves and all other similarly situated persons (the "Putative Class"),

as and for their complaint against Defendants and each of them, allege as follows:

## NATURE OF THE ACTION

1.    This is a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure (the

"Rules"), made applicable herein by Rule 7023 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules").  This is an action by Plaintiffs and other similarly

situated former employees of General Wireless Operations, Inc. (hereinafter

"Defendant/Debtor GWO") seeking the following relief  against Defendant/Debtor GWO

and the co-Defendants (collectively "Defendants"):

   a.    Damages for Defendants' violations of the  Worker Adjustment and Retraining

         Notification Act  [29 U.S.C. §§ 2101, *et* a seq.]  (collectively, the "WARN Act")

         in an amount equal to 60 days' wages and benefits payable by Defendants during

         the applicable period for each affected employee;

   b.    Wages and benefit payments/contributions earned by members of the Putative

         Class following the Petition Date (as defined herein), which are entitled to

         administrative expense priority pursuant to 11 U.S.C.  § 503(b)(1)(A)(I);

   c.     Damages and penalties for Defendants' violations of labor laws of the states of

         California and Washington arising form or related to the Mass Layoffs/ Plant

         Closings (as defined below) and from the WARN Act violations as alleged

         herein;

   d.    Declaratory relief; and

e.      Equitable relief, including an Order directing Defendants immediately to pay any

unpaid portion of post-petition wages owed to Plaintiffs and members of the

Putative Class, and an Injunction against enforcement of the below-defined

Alleged Waiver.

## THE PARTIES

2.      From at least January 2015 to the time of his layoff on or about May 31, 2017, Plaintiff

VANDERLIP was employed by Defendant/Debtor GWO and/or its predecessor Radio

Shack Corporation at its facility in San Luis Obispo, California as Market Manager and

Store Manager.


3.      From at least January 2015 to the time of his layoff on or about May 31, 2017, Plaintiff

HOSKISON was employed by Defendant/Debtor GWO and/or its predecessor Radio

Shack Corporation in Tacoma, Washington and Carpenteria, California as Regional

Director, Senior Marketing Sales Manager and District Training Manager.


4.      Plaintiffs and the Putative Class are former employees of Defendant/Debtor: (1) whose

employment was terminated from on or about March 1, 2017 through on and after May

31, 2017 as part of a mass layoff and/or plant closing (the "Mass Layoff /Plant Closing")

by Defendants; and (2) who are entitled to additional resulting damages under the laws of

their respective states.  Plaintiffs seek to represent a class and two sub-classes of

similarly situated persons, as defined herein.

2

5.      Defendants include (1) the Defendant/Debtor GWO, debtor and debtor in possession

herein, whose voluntary petition for relief pursuant to Chapter 11 of Title 11 of the

United States Code (the "Bankruptcy Code") was filed on March 8, 2017 (the "Petition

Date"); (2) Dene Rogers, who was at all times relevant President and Chief Executive

Officer of General Wireless Inc. and/or General Wireless Operations, Inc.; (3) ROBERT

LAVAN who at all times relevant, acted as Chairman of General Wireless Inc. and/or

General Wireless Operations, Inc.; and (4) the other co-Defendants herein who are in

some manner jointly, with Defendant/Debtor GWO, liable for the claims asserted herein.

Since the Petition Date, GWO has been acting as debtor in possession pursuant to

sections 1107 and 1108 of the Bankruptcy Code.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this adversary proceeding pursuant to 28

U.S.C. §§ 157, 1331, 1334 and 1367.  This is a core proceeding pursuant to 28 U.S.C. §§

157(b)(2)(A), (B) and (O).


7.      Venue of this proceeding is proper in this Court, pursuant to 28 U.S.C. § 1473 and

Fed.R.Bankr.P.5005(a).


## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

8.      At all relevant times, Defendant ROBERT LAVAN acted as Chairman of General

Wireless Inc. and/or General Wireless Operations, Inc., and therefore is liable to

Plaintiffs ERIC VANDERLIP and CALVIN HOSKISON for wage claims under

3

<u>California Labor Code</u> ("LC) section 558.1 and <u>Revised Washington Code</u> ("RCW") 49.52.050 and 49.52.070.  At all relevant times, Defendant DENE ROGERS operated and was authorized to operate General Wireless Inc. throughout the State of California, including Los Angeles County, and throughout the state of Washington.

9.    The identities of DOES 1-25 are unknown at this time, and the Complaint will be amended at such time when such identities are known to Plaintiffs.  Plaintiffs are informed and believe and thereon allege that each of the Defendants sued herein as DOE is responsible in some manner for the acts, omissions, or representations alleged and, unless the context indicates otherwise, any reference to "Defendant" or "Defendants" shall mean Defendants and DOES 1-25, and each of them.

10.   Plaintiffs are informed and believe and thereon allege that each of the Defendants acted in concert with each of the other Defendants pursuant to a common plan and in so acting, each Defendant was the agent of the other Defendants.   Each of the Defendants in some manner conspired with the other Defendants with respect to the acts and omissions which are the subject of this Complaint.

11.   Plaintiffs are informed and believe, and based thereon allege, that at all material times, one or more of each named and/or unnamed Defendants was in some fashion, by contract or otherwise, the predecessors, affiliates, alter egos, assigns, joint-venturers, co-venturers or partners of one or more of the remaining named and/or unnamed Defendants, and as

4

hereinafter alleged, was acting within that capacity.

12.     Plaintiffs are further informed, and believe, and thereon allege that one or more of the

remaining named and/or unnamed Defendants are the successors of one or more of the

remaining named and/or unnamed Defendants.  Such successors are liable for the

occurrences, damages, and injuries alleged herein to the same extent its predecessors are

liable for the alleged occurrences, damages and injuries.

13.     Plaintiffs allege that Defendants acted as the employers and/or joint employers of

Plaintiffs, and that they shared control of Plaintiffs as employees, either directly or

indirectly.  This control includes, but is not limited to, the authority to hire and fire,

assign work tasks, engage in day-to-day supervision of employees, and controlling

employee records.

14.     Plaintiffs allege that Defendants were the alter-egos of one or more of the remaining

named and/or unnamed Defendants, and as hereinafter alleged, were acting for their own benefit

and/or the benefit of one or more of the remaining named and/or unnamed Defendants.

Plaintiffs allege that Defendants were acting on behalf of each other in the establishment

of, ratification of, and/or execution of the illegal practices and policies as set forth in this

pleading. Plaintiffs are further informed and believe, and thereon allege that at all times

relevant hereto Defendants had decision-making responsibility for, and establishment and

execution of, illegal practices and policies for each other and are, therefore, liable on the

causes of action herein.

15.    Plaintiffs further allege that Defendants failed to adhere to corporate and legal

formalities.  Plaintiffs allege, that at all material times, one or more of each unnamed

Defendants was in some fashion, by statute, law or otherwise, the agent, agency, branch,

department or the like of one or more of the remaining named and/or unnamed

Defendants for the acts alleged herein and was acting within that capacity.

16.    Plaintiffs further allege that there exists such a unity of interest and ownership between

Defendants that the individuality and separateness of those Defendants have ceased to

exist.  The business affairs of Defendants are, and at all times relevant hereto were, so

mixed and intermingled that the same cannot reasonably be segregated, and the same are

in inextricable confusion.  Defendants were used as mere shells and conduits for the

conduct of certain of other Defendants' affairs. The recognition of the separate existence

of Defendants would not promote justice, in that it would permit Defendants to insulate

themselves from liability to Plaintiff.  Accordingly, Defendants constitute the alter egos

of each other, and the fiction of their separate existence must be disregarded at law and in

equity, because such disregard is necessary to avoid fraud and injustice to Plaintiffs

herein.

17.     Plaintiffs are informed and believe, and thereon allege, that at all relevant times
Defendant maintained and operated business and/or commercial facilities throughout the
United States, including San Luis Obispo and Carpenteria, California and Tacoma,
Washington (collectively, the "Covered Facilities").

18.     Until their layoff by Defendants as hereinafter alleged, Plaintiffs and other similarly
situated persons were employees of Defendant/Debtor or one of the other Defendants,
who worked at or reported to one of the Covered Facilities.

19.     Plaintiffs are informed and believe, and thereon allege, that under WARN Act section
2101(a)(1), Defendant/Debtor was a "business enterprises" that at all relevant times
employed 100 or more employees, excluding part-time employees, or 100 or more
employees who in the aggregate worked at least 4,000 hours per week (exclusive of
overtime). According to pleadings filed by Defendant/Debtor GWO, Defendants
employed approximately 5,900 full and part-time hourly and salaried employees
throughout the United States[1].  Plaintiffs are informed and believe and thereon allege that
each full-time employee was employed at one of the Covered Facilities which was each a
facility or operating unit described by WARN Act section 2101(a)(2).

---

[1]     *[In re General Wireless Operations, etc., et al.,* Case No.17-10506-BLS, dkt.711,
¶ 6]

20.     The Plaintiffs, and each person they seek to represent herein, were laid off from one of the Covered Facilities as part of the Mass Layoff/Plant Closing, which was ordered by the Defendants, and which occurred from on or about March 1, 2017 through on or about May 31, 2017, and thereafter. The resulting termination of their employment was without cause on the part of Plaintiffs, and each of them, and without cause on the part of each person Plaintiffs seek to represent.  Defendants terminated the Plaintiffs' employment as part of the Mass Layoff/ Plant Closing, which qualifies as an event for which they were entitled to receive 60 days' advance written notice under the WARN Act.  Neither Defendant/Debtor GWO nor any other party gave such notice.

21.     Pursuant to the instructions of Defendants' officers and directors, including but not limited to DENE ROGERS, President and Chief Executive Officer, and ROBERT LAVAN, Chairman, intentionally failed to pay Plaintiffs HOSKISON, VANDERLIP, and Class the wages owed to them on the last date of their employment, including salaries, commissions, bonuses, and accrued vacation wages, and failed to reimburse them for all of their expenses incurred on the job.

22.     Plaintiffs and members of the Putative Class were employed by the Defendants from and after the Petition Date until on or about May 31, 2017.   Defendants failed to pay Plaintiffs and members of the Putative Class their entitled wages, benefits and other compensation which had accrued and were due and payable pursuant to section 503(b)(1)(A)(I) of the Bankruptcy Code.

8

23.    On or about June 18, 2017, General Wireless, Inc. and/or General Wireless Operations,

Inc., pursuant to the instructions of its officers and directors, including but not limited to

Defendant ROGERS and Defendant LAVAN, provided Plaintiffs HOSKISON,

VANDERLIP, and Class document titled "General Wireless Operations, Inc. Separation

Bonus Agreement and Release" (the "Alleged Waiver") purporting to release all of their

wage claims against General Wireless, Inc. and/or General Wireless Operations, Inc. in

exchange for part of their wages owed.  Plaintiffs HOSKISON and VANDERLIP are

informed and believe that the release was circulated to all members of the Putative Class.

24.    The Alleged Waiver states, at Paragraph 2 thereof:

2.    In consideration of the payment described herein, and other good and valuable
consideration, EMPLOYEE hereby irrevocably and unconditionally releases GENERAL
WIRELESS, its subsidiaries, affiliates, shareholders, directors, officers, agents,
employees and representatives, from any and all claims and causes of action, known or
unknown, and damages, including attorneys' fees and costs, relating to or arising in any
way from EMPLOYEE's employment with GENERAL WIRELESS or the termination of
such employment.  This release and waiver of all claims and damages includes, but is not
limited to, any tort or claim of contractual restriction, any claims under any federal, state
or local law, regulation or ordinance and any claim(s) for unpaid wages, salary,
commissions, benefits, bonuses, deferred compensation, accrued and unpaid vacation and
every other obligation of any kind known or unknown . . .  EMPLOYEE acknowledges
that he/she has been fully compensated for all wages due for services performed during
EMPLOYEE'S employment with GENERAL WIRELESS.

A true and correct redacted copy of the Alleged Waiver received by Plaintiffs is attached

hereto as Exhibit "A".  Plaintiffs are informed and believe that the Alleged Waiver, or a

communication in substantially the same form and content as Exhibit "A" was circulated

to all members of the Putative Class.  While Plaintiffs received the Alleged Waiver form

on June 18, 2017, they were informed by Defendants that their earned bonuses and other

9

earned compensation wages would not be paid unless they signed and returned the

Alleged Waiver by June 22, 2017 – only four days later.  From the Alleged Waiver,

Plaintiffs understood that they would not receive earned bonuses and other compensation

earned wages owed to them unless they executed and delivered these waivers to

Defendants by June 22, 2017.

25.     Plaintiffs are informed and believe and thereon allege that substantially the same form as

Exhibit "A" hereto was sent to all members of the Putative Class. Plaintiffs are informed

and believe and thereon allege that by June 22, 2017 some members of the Putative Class

will have executed and delivered the Alleged Waiver to Defendants.

26.     Plaintiffs HOSKISON, VANDERLIP and part of Class refused to sign the Alleged

Waiver.  Based on their refusal, General Wireless, Inc. and/or General Wireless

Operations, Inc., based on instructions of Defendants ROGERS and LAVAN, refused,

and continues to refuse, to pay them their remaining salaries, commissions, bonuses,

accrued vacation wages, and reimbursements owed.


## CLASS ACTION ALLEGATIONS

**Class and Sub-Class Definitions**

27.     The Plaintiffs and the  persons whom they seek to represent constitute a class within the

meaning of Bankruptcy Rules 7023 (a) and (b)(3) and Rules 23(a) and (b)(3).  The

proposed Class consists of former employees of one of the Defendants herein, including

those listed in Defendant/Debtor GWO's Schedule E [dkt 526], whose employment by
Defendant was terminated from a Covered Facility on or after May 31, 2017 without the
written notice as and when required by the WARN Act. The proposed Class consists of
two sub-classes as follows:

(1)   California Sub-Class:  Former employees of Defendants who were
employed by them in the state of California, and who, as a result of the
Mass Layoff/Plant Closing and their termination/separation from
employment by Defendants as alleged herein, are entitled to rights;
remedies; damages and penalties; and other recoveries provided under
California law, including those afforded by the following: California LC
§§ 1400 *et seq.*  ("California WARN Act"); LC 201-203 (failure to pay all
wages owed upon discharge); LC 206.5 (prohibition against requiring
release of claims in exchange for partial of wages); LC 221 (garnishment
of wages); LC 227.3 (failure to pay vacation wages upon discharge); LC
2802 (failure to reimburse for business expenses); California Business &
Professions Code section 17200 *et seq.* (unfair competition); and LC
218.5-218.6 (attorneys' fees, costs, interest).

(2)   Washington Sub-Class: Former employees of Defendants who were
employed by them in the state of Washington, and who, as a result of the
Mass Layoff/Plant Closing and their termination/separation from
employment as alleged herein, are entitled to rights; remedies; damages;
and other recoveries provided under Washington law, including, without

11

limitation, those afforded by the following: Washington Administrative Code ("WAC") 357-46 (layoff notice); RCW 49.48-010 (failure to pay all wages earned upon termination of employment), RCW 49.52.050 (failure to pay all wages earned); RCW 49.52.070 (failure to pay all wages earned); RCW 49.48030 (attorneys' fees).

28.     The Plaintiffs bring this action on their own behalf and on behalf of the Putative Class:

(A)     As to  Plaintiffs and all members of the Putative Class, Plaintiffs seek:

(1)     damages as provided by the WARN Act, as described hereinbelow;

(2)     a judicial declaration that unpaid wages and other benefits accruing to Plaintiffs and the Putative Class after the Petition Date give rise to a post-petition claim for, among other things, back-pay, and which is/are to be accorded administrative expense priority pursuant to 11 U.S.C.§ 503(b)(1)(A);

(3)     a judicial declaration that the portion of the WARN Act damages accruing after the Petition Date constitutes a post-petition claim for, among other things, back-pay and that arose as the result of the Defendant/Debtor's post-petition violations of  state and federal law, and which claims are to be accorded administrative expense priority pursuant to 11 U.S.C.§ 503(b)(1)(A);

(4)     A judicial determination that the Alleged Waiver is unenforceable, or as a matter of equity should not be enforced;

12

(5)      An injunction prohibiting Defendants from seeking to enforce the Alleged Waiver; and.

(6)      Attorneys' fees pursuant to WARN Act section 2104(a)(6).

(B)      As to Plaintiff VANDERLIP and all members of the California Sub-Class, such Plaintiffs seek additional damages, remedies and other relief afforded to them under California law, including under the California WARN Act.

(C)      As to Plaintiff HOSKISON and all members of the Washington Sub-Class, such Plaintiffs seek additional damages, remedies and other relief afforded to them under Washington law.

29.      There is a well-defined community of interest in this litigation. The identity of the members of the Putative Class and Sub-Classes, and information regarding each such member's recent residence address and the rate of pay and benefits that were being paid or provided by Defendant to such member at the time of his or her termination can be ascertained from Defendant's books and records, or from information readily accessible to Defendant, including information contained in Defendant's papers filed with the Court. Notice can be sent to the Class Members by mail, email, the Internet, or other means authorized by the Court.

a.      **Numerosity**: The Class Members are so numerous that joinder of all of them is extremely impracticable. Plaintiffs are informed and believe and thereon allege, that the size of the Putative Class might be as high as 5,900 persons, as

represented by Defendant/Debtor GWO.  [*In re General Wireless Operations,*

*etc., et al.,* Case No.17-10506-BLS, dkt.711, ¶ 6].

b.     **Adequacy of Representation**:  Plaintiffs, themselves and through their

attorneys, will fairly and adequately protect the interests of the class and sub-

classes, and Plaintiffs have no interest adverse to the interests of the class or sub-

classes.  Plaintiffs' attorneys are experienced class action attorneys who will fully

and adequately represent and protect the class, and who are ready, willing and

able to do so.

c.     **Common Questions of Law and Fact** exist as to the Putative Class and sub-

classes, and predominate over any questions that affect only individual class

members.  Such common questions include, but are not limited to, the following:

(1)   Whether Defendants were, at the time of the Mass Layoff/Plant Closing,

"Employers" covered by the WARN Act;

(2)   Whether Defendants were, at the time of the Mass Layoff/Plant Closing

required to give not fewer than 60 days' written notice of its Mass Layoff/Plant

Closing to the members of the Putative Class and the Sub-Classes;

(3)   Whether in failing to give such notice, Defendants violated the WARN Act;

(4)    Whether as a result of such violations, members of the Putative Class are

entitled to  damages under the WARN Act, and if so, what components of wages

and employee benefits generally are to be included in such damages;

(5)       Whether and to what extent the Putative Class and Sub-Classes are

entitled to recover attorneys' fees pursuant to WARN Act section
2104(a)(6) or other applicable law;

(6)     Whether and to what extent WARN Act damages and attorneys'
fees described in subparagraphs (5) through (6) directly above are to be
accorded administrative expense status pursuant to section 503(b)(1)(A) of
the Bankruptcy Code;

(7)     Whether the Alleged Waiver is unenforceable under applicable law and/or
void as against public policy;

(8)     Whether the Court should enjoin enforcement of the Alleged Waiver:

(9)     As to Sub-Class 1, the extent to which members of this sub-class are
entitled to additional rights, remedies damages and other relief under
California law; and

(10)    As to Sub-Class 2, the extent to which members of this sub-class are
entitled to additional rights, remedies damages and other relief under
Washington law.

d.      **Typicality.**  Plaintiffs' claims are typical of the claims of  members of the
Putative Class and Sub-Classes, in that all such members were subjected to
employment termination as part of  the Mass Layoff/Plant Closing, without
having received the written notice as required by the WARN Act.  The claims of
Plaintiffs and the other class members are based on the same legal theories.  The
same unlawful conduct was directed at and affected Plaintiffs and the other class
members. As to the proposed Sub-Classes, the claims of Plaintiff VANDERLIP

15

are typical of members of proposed Sub-Class 1, in that they are based on the same legal theories under California law.   The claims of Plaintiff HOSKISON are typical of members of proposed Sub-Class 2, in that they are based on the same legal theories under Washington law.

e.  **Superiority of Class Action.**  A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impracticable.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender.  Also, because the losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them without the benefit of certification of the Putative Class and Sub-Classes.  On the other hand, important public interests will be served by addressing the matter as a class action.  The cost to the court system and the public of adjudication of individual litigation and claims would be substantial, and substantially more than if the claims are adjudicated in a class action.  Individual litigation and claims would also present the potential for inconsistent or contradictory results. The public interest in protecting the rights of class members favors disposition of the controversy in the class action form.  The individual class members have no

16

interest in controlling the prosecution of separate actions.  Plaintiffs are not aware

of any other litigation concerning the controversy already commenced by or

against members of the class.  There will be no significant difficulties in the

management of the class action.


**FIRST CLAIM FOR RELIEF**
[For Damages Under the WARN ACT]

30.   Plaintiffs incorporate the allegations set forth in paragraphs 1 through 29,

inclusive, hereinabove as though set forth fully anew.


31.   Plaintiffs are informed and believe and thereon allege that at all relevant times, the

Defendants employed within the United States approximately 5,900 full-time employees

who in the aggregate worked at least 4,000 hours per week exclusive of hours of

overtime. As part of that workforce, Defendant/Debtor GWO and one or more of the

remaining Defendants employed not fewer than 100 full-time employees within the state

of California.    Plaintiffs are further informed and believe and thereon allege that all such

persons had, at all times relevant, been employed by Defendants for at least six months

during the previous twelve-month period.


32.   Plaintiffs are informed and believe and thereon allege that at all relevant times, each

Defendant was an "employer", as that term is defined in WARN Act section 2101 (a)(1)

and 20 C.F.R. § 639(a), and continued to operate as a business until it determined to

order the Mass Layoff/Plant Closing at the Covered Facilities.   At all times relevant, one

17

or more of the Covered Facilities was an industrial or commercial facility that employed

100 or more employees, excluding part-time employees, or 100 or more employees who

in the aggregate work at least 4,000 hours per week (exclusive of overtime).

33.    From on or about March 1, 2017 through on or about May 31, 2017, the Defendants

ordered the Mass Layoff/Plant Closings at the Covered Facilities, which resulted in the

termination of more than 50 employees within a 30-day period.

34.    The Mass Layoff/Plant Closing at each of the Covered Facilities resulted

in "employment losses," as that term is defined by WARN Act section 2101(a)(2) for at

least fifty (50) of Defendant's employees, as well as at least 33% of Defendant's

workforce at the Covered Facilities, excluding "part-time employees," as that term is

defined by WARN Act section 2101(a)(8).

35.    Each Plaintiff and each of the other members of the Putative Class and proposed

subclasses was discharged by the Defendants and thereby separated from their

employment, without cause on his or her part as part of or as the reasonably foreseeable

result of the Mass Layoff/Plant Closing ordered by the Defendants with respect to the

Covered Facilities.

36.     Each Plaintiff and each of the other members of the Putative Class and proposed Sub-
        Class is an "affected employee" of the Defendant within the meaning of the WARN Act
        section 2101(a)(5).

37.     The Defendant was required by the WARN Act to give each of the Plaintiffs
        and each of the other members of the Putative Class and Sub-Classes at least 60 days'
        advance written notice of his or her termination.

38.     The Defendant failed to give the Plaintiffs and other members of the Putative Class and
        Sub-Classes written notice that complied with the requirements of the WARN Act.

39.     Each Plaintiff and each of the other members of the Putative Class and Sub-Classes is an
        "aggrieved employee" of the Defendants as that term is defined in WARN Act section
        2104 (a)(7).

40.     Defendants failed to pay the Plaintiffs and each of the other members of
        the Putative Class their respective wages, salary, commissions, bonuses, accrued holiday
        pay and accrued vacation for 60 days following their respective terminations, and failed
        to make the pension and 401(k) contributions and provide employee benefits for 60 days
        from and after the dates of their respective terminations.

-19-

41.     As a result of the Mass Layoff/Plant Closing, the Plaintiffs and the other members of the Putative Class have been damaged in amounts equal to the sum of: (a) their respective lost wages, salaries, commissions, bonuses, accrued holiday pay, accrued vacation pay, 401 (k) contributions for 60 days; (b) the health and medical insurance and other fringe benefits that they would have received or had the benefit of receiving, for a period of 60 days after the dates of their respective terminations; and (c) medical expenses incurred during such period by such persons that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period.

42.     As a result of the Mass Layoff/Plant Closing, the Plaintiffs and the other members of the Putative Class have incurred, and will continue to incur until conclusion of this action, attorneys' fees and costs in the commencement and continuation of this action.

43.     As a result of the Mass Layoff/Plant Closing, Plaintiffs and the members of the Putative Class's separation from employment by Defendants, Plaintiffs and the other members of the Putative Class are entitled to rights, remedies, damages and other relief as provided by the WARN Act.

## SECOND CLAIM FOR RELIEF
[Failure to pay Post-Petition Wages/Benefits – 11 U.S.C. §503(b)(1)(A)]

44.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 29, inclusive, hereinabove as though set forth fully anew.

-20-

45.   As a proximate result of the Defendants' failure to pay the full amount of post-petition

wages, benefits and their failure to make required employer-contributions for the benefit

of their employees,  Plaintiffs and the members of the Putative Class are holders of

claims that are entitled to allowance and payment with administrative expense priority

pursuant to 11 U.S.C. § 503(b)(1)(A).

46.   Defendants' failure to timely pay post-petition wages entitles Plaintiffs and the members

of the Putative Class to immediate allowance and payment of such unpaid wages.

### THIRD  CLAIM FOR RELIEF
[As to the California Sub-Class Only]

47.   Except to the extent, if any, inconsistent with this Second Claim for Relief, Plaintiffs

incorporate the allegations set forth in paragraphs 1 through 29, inclusive, hereinabove as

though set forth fully anew.

48.   At all times relevant, Plaintiff VANDERLIP was employed by Defendant /Debtor GWO

at its location in San Luis Obispo, California.

49.   At all times relevant, members of California Sub-Class were employed by Defendants

within the state of California, and as such, Defendants were required to comply with

California's employment and labor laws, including the following provisions of the

California Labor Code: LC 201-203 (failure to pay wages owed upon termination); LC

206.5 (prohibition against release of claims in exchange for partial payment of wages);

-21-

LC 221 (garnishment of wages); LC 227.3 (failure to pay vacation wages upon

discharge);

LC 2802 (failure to reimburse for business expenses); California Business & Professions

Code section 17200 *et seq.* (unfair competition); and LC 218.5-218.6 (attorneys' fees,

costs, interest).


50.     At all relevant times, the Defendants employed not fewer than 100 full-time

 employees within the state of California.    All such persons employed within California,

had, at all times relevant, been employed by Defendant for at least six months during the

previous twelve-month period, and as such, as of the time of the Mass Layoff/Plant

Closing, they were covered persons under the California WARN Act.


51.     At all times relevant, Defendant/Debtor GWO was an "Employer" for purposes of the

California WARN Act.  Plaintiff VANDERLIP is informed and believes, and thereon

alleges, that each of the other Defendants was also an "Employer" under the California

WARN Act.  As such, the Defendants were required, pursuant to section 1401(a) of the

California WARN Act, to give each of the Plaintiffs and  each of the other members of

the California Sub-Class at least 60 days' advance written notice of his or her

termination.  Pursuant to California WARN Act § 1401(a), Defendants were also

required to give written notice regarding the Mass Layoff/Plant Closing to one or more

officials and/or agencies of the State of California and/or political subdivisions thereof,

including the California Employment Development Department.

52.   The Defendants failed to give the Plaintiffs and other members of the California Sub-

Class written notice that complied with the requirements of the California WARN Act.

Defendants further failed to give required written notice regarding the Mass Layoff /Plant

Closing to one or more agencies of the State of California, including the California

Employment Development Department.


53.   The Defendants further failed to pay the Plaintiffs and each of the other members of the

California Sub-Class their respective wages, salary, commissions, bonuses, accrued

holiday pay and accrued vacation for 60 days following their respective terminations and

failed to make required contributions into employee benefit plans, and to compensate

members of the proposed California Sub-Class for accrued but unpaid vacation and other

forms of paid-time-off that would have accrued during the 60 days from and after the

Mass Layoff/Plant Closing.


54.   Pursuant to LC 558.1, Defendants LAVAN and ROGERS  are officers and directors of

General Wireless Inc. and/or General Wireless Operations Inc. who are personally liable

to Plaintiffs and Class for the violation of LC 2802.


55.   Defendant DENE ROGERS acted as President and Chief Executive Officer of General

Wireless Inc. and/or General Wireless Operations, Inc. at all relevant times, and therefore

is liable to Plaintiffs ERIC VANDERLIP and California Sub-Class for their wage claims under LC 558.1.

56.    Defendant ROBERT LAVAN acted as Chairman of General Wireless Inc. and/or General Wireless Operations, Inc. and/or General Wireless Operations Inc. at all relevant times, and therefore is liable to Plaintiffs ERIC VANDERLIP and the California Sub-Class for wage claims under LC 558.1.

57.    In violation of California law, Defendants knowingly and willfully refused to perform obligations to compensate Plaintiffs and Class for all wages earned including commissions, bonuses, vacation wages and reimbursements owed.  As a direct result, Plaintiffs and Class have suffered, and continue to suffer, substantial losses related to the use and enjoyment of such wages, lost interest on such wages, and expenses and attorneys' fees in seeking to compel Defendants to fully perform their obligations under California law, all to their respective damages in an amount according to proof at time of trial, but in amounts in excess of the jurisdiction of this Court.

58.    As a result of Defendants' violations of the California WARN Act, and other California labor laws as alleged herein, the Plaintiffs and the other members of the California Sub-Class have been damaged in amounts equal to the sum of: (a) their respective lost wages, salaries, commissions, bonuses, accrued holiday pay, accrued vacation pay, 401(k) contributions for 60 days; (b) the health and medical insurance and other fringe benefits

that they would have received or had the benefit of receiving, for a period of 60 days

following the Mass Layoff/Plant Closing; and (c) medical expenses incurred during such

period by such persons that would have been covered and paid under the then applicable

employee benefit plans had that coverage continued for that period.

59.     As a result of Defendant's violations of the California WARN Act, the Plaintiffs and the

other members of the California Sub-Class have incurred, and will continue to incur until

conclusion of this action, attorneys' fees and costs in the commencement and

continuation of this action.

60.     As a result of the Mass Layoff/Plant Closing and their separation from employment by

Defendants, Plaintiff VANDERLIP and the other members of the California Sub-Class

are entitled to rights, remedies, damages and other relief as provided by the California

Labor Code.

## FOURTH  CLAIM FOR RELIEF
[As to the Washington Sub-Class Only]

61.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 29,

inclusive, hereinabove as though set forth fully anew.

62.     At all times relevant, Plaintiff HOSKISON was employed by Defendant /Debtor GWO at

its location in Tacoma, Washington.

63.    At all times relevant, members of Washington Sub-Class were employed by Defendants

within the state of Washington, and as such, Defendants were required to comply with

Washington's employment and labor laws, including the following provisions: WAC

357-46 (layoff notice); RCW 49.48-010 (failure to pay all wages earned upon termination

of employment); RCW 49.52.050 (failure to pay all wages earned); RCW 49.52.070

(failure to pay all wages earned); and RCW 49.48030 (attorneys' fees).

64.    RCW 49.52.050 prohibits employers or officers from willfully paying an employee less

than the wages the employer is obligated to pay such employee.

65.    RCW  49.52.070 provides that any "officer, vice principal or agent of any employer who

shall violate any of the provisions of RCW 49.52.050 . . . shall be liable in a civil action .

. . to judgment for twice the amount of the wages unlawfully rebated or withheld by way

of exemplary damages, together with costs of suit and a reasonable sum for attorney's

fees."

66.    General Wireless Inc. and/or General Wireless Operations Inc., through the instructions

of Defendants, and each of them, willfully paid Plaintiffs and Class less than all their

wages owed upon termination.  Defendants are officer and agents of General Wireless

Operations Inc., and are therefore personally liable to Plaintiffs and Class for twice the

amount of the wages unlawfully withheld, together with costs of suit and reasonable

attorneys' fees.

-26-

67. Defendant DENE ROGERS acted as President and Chief Executive Officer of General Wireless Inc. and/or General Wireless Operations, Inc. at all relevant times, and therefore is liable to Plaintiff CALVIN HOSKISON and the Washington Sub-Class for their wage claims under RCW 49.52.050 and 49.52.070.

68. Defendant ROBERT LAVAN acted as Chairman of General Wireless Inc. and/or General Wireless Operations, Inc. and/or General Wireless Operations Inc. at all relevant times, and therefore is liable to Plaintiff CALVIN HOSKISON, and the Washington Sub-Class for wage claims under RCW 49.52.050 and 49.52.070.

69. As a result of Defendants' violations of the California WARN Act, and other Washington labor laws as alleged herein, the Plaintiffs and the other members of the Washington Sub-Class have been damaged in amounts equal to the sum of: (a) their respective lost wages, salaries, commissions, bonuses, accrued holiday pay, accrued vacation pay, 401(k) contributions for 60 days; (b) the health and medical insurance and other fringe benefits that they would have received or had the benefit of receiving, for a period of 60 days following the Mass Layoff/Plant Closing; and (c) medical expenses incurred during such period by such persons that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period.

70. As a result of the Mass Layoff/Plant Closing and their separation from employment by Defendants, Plaintiff HOSKISON and the other members of the Washington Sub-Class

are entitled to rights, remedies, damages and other relief as provided by WAC 357-46;

RCW 49.48-010; RCW 49.52.050; RCW 49.52.070; and RCW 49.48030.


**FIFTH CLAIM FOR RELIEF**
**[Injunctive and Other Equitable Relief As to All Class Members]**

71.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 29,

inclusive,  hereinabove as though set forth fully anew.


72.    As a separate and distinct claim for relief, Plaintiffs complain and reallege all of the

allegations contained in this Complaint, and incorporate them by reference, excepting

those allegations which are inconsistent with this claim for relief.


73.    Defendants have refused and continue to refuse to perform their obligations under the

WARN Act, including their failure to compensate Plaintiffs and the Putative Class for

wages that would have been earned and to  provide the benefits to them which would

have accrued during the sixty days following the Mass Layoff/Plant Closure.   As a direct

result, Plaintiffs and the Putative Class have suffered, and continue to suffer, substantial

losses related to the use and enjoyment of such wages and benefits.  Plaintiffs thus seek

equitable relief as deemed appropriate by the Court, such as a court order requiring

Defendants to provide the compensation and such employee benefits as the WARN Act

requires; and to make required contributions under to applicable employee benefit plans

and other benefits that would have accrued as of the sixtieth day following the Mass

Layoff/Plant Closing.

74.     Defendants have failed and refused to pay Plaintiffs and the members of the Putative

        Class their wages that were earned and accrued after the Petition Date. Such failure has

        caused an economic hardship to Plaintiffs and members of the Putative Class.   An Order

        of the Court is therefore necessary to compel Defendants to pay such post-petition wages

        immediately.

75.     Plaintiffs further seek an injunction barring the enforcement of the Alleged Waiver.

## SIXTH CLAIM FOR RELIEF
### [Declaratory Relief As to All Class Members]

76.     Plaintiffs incorporate the allegations set forth in paragraphs 1 through 29, inclusive,

        hereinabove as though set forth fully anew.

77.     An  actual controversy now exists between Plaintiffs and Defendants as to the liability of

        each of the Defendants as a successor employer.  Plaintiffs contend that: (a)  Defendants

        are to be considered employers or successor employers, whereas Defendants dispute this

        contention; and (b) the Alleged Waiver is unenforceable as a matter of law and equity,

        whereas Defendants dispute this contention.

78.     Declaratory relief is necessary to determine:

        1.      Whether and to what extent unpaid wages of Plaintiffs and the Putative

                Class are entitled to administrative expense priority under 11 U.S.C.§

                503(b)(1)(A).

-29-

2.    Whether and to what extent each of the Defendants is liable under the WARN Act for the acts and omissions complained of herein;

3.    Whether damages under the WARN Act are to be accorded administrative expense priority pursuant to 11 U.S.C.§ 503(b)(1)(A);

4.    Whether damages pursuant to California law in favor of the California Sub-Class are to be accorded administrative expense priority pursuant to 11 U.S.C.§ 503(b)(1)(A);

5.    Whether damages pursuant to Washington law in favor of the Washington Sub-Class are to be accorded administrative expense priority pursuant to 11 U.S.C.§ 503(b)(1)(A);

6.    The enforceability, if any, of the Alleged Waiver;

7.    The extent of employee benefits to which Plaintiffs and the Putative Class are entitled as a result of Defendants' violations of the WARN Act.

79.    Plaintiffs and the Putative Class have no speedy or adequate remedy, except through an action for equitable declaratory, by which to assert Defendants' liability under the WARN Act, and to assert the unenforceability of the Alleged Waiver, and such an action is necessary to the disposition of this action.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs and the Putative Class, demnd judgment as follows:

1.      For damages and other relief as against Defendants and each of them for their

violations of the WARN Act;

2.      For an order enjoining Defendants and their respective agents, servants, and

employees, and all persons acting under, in concert with, or for Defendants from

failing to provide Plaintiffs and the Putative Class all compensation and benefits

to which they are entitled as a result of Defendants' WARN Act violations;

3.      As to the California Sub-Class: LC 201-203 (failure to pay all wages owed upon

discharge); LC 206.5 (prohibition against release of claims in exchange for partial

payment of wages); LC 221 (garnishment of wages); LC 227.3 (failure to pay

vacation wages upon discharge); LC 2802 (failure to reimburse for business

expenses); California Business & Professions Code section 17200 et seq. (unfair

competition); and LC 218.5-218.6 (attorneys' fees, costs, interest);

4.      As to the Washington Sub-Class: WAC  357-46 (layoff notice); RCW 49.48-010

(failure to pay all wages earned upon termination of employment), RCW

49.52.050 (failure to pay all wages earned); RCW 49.52.070 (failure to pay all

wages earned); RCW 49.48030 (attorneys' fees);

5.      For appropriate declaratory, injunctive, and equitable relief as requested herein;

6.      For reasonable attorneys' fees; and

7.      For all such other and further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually, and on behalf of all members of the Putative Class, hereby demand a jury trial.

## STATEMENT PURSUANT TO LOCAL RULE 7008-1

Plaintiffs, individually, and on behalf of members of the Putative Class, consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

DATED:  September 1, 2017          **KLEIN, LLC**

By   */s/ Julia B. Klein*
Julia B. Klein (DE 5198)
919 North Market Street, Suite 600
Wilmington, Delaware 19801
Telephone: (302) 438-0456
 Email: klein@kleinllc.com

**KESLUK, SILVERSTEIN, & JACOB, PC**
Douglas N. Silverstein [Cal SBN 181957]
Mia Munro. [Cal. SBN 281387]
9255 Sunset Blvd., Suite 411
Los Angeles, California 90069-3309
Telephone:  (310) 273-3180
Facsimile:  (310) 273-6137
Dsilverstein@californialawattorney.com;
Mmunro@californialaborlawattorney.com

- and –

**BARNESS & BARNESS LLP**
Daniel I. Barness [Cal. SBN 104203]
11377 W. Olympic Blvd., 2nd Floor
Los Angeles, CA 90064
Telephone:  (310) 594-3011
Facsimile:   (310) 473-8700
Daniel@BarnessLaw.com

*Attorneys for Plaintiffs and the Putative Class*