IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| GENERAL WIRELESS OPERATIONS INC. DBA RADIOSHACK, *et al.*, | Case No. 17-10506 BLS |
| Debtors.[1] | (Jointly Administered) |
| | |
| CALVIN HOSKISON and ERIC VANDERLIP, on behalf of themselves and all others similarly situated, | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| Plaintiffs, | |
| v. | Adv. Pro. No. 17-51043 (BLS) |
| GENERAL WIRELESS OPERATIONS INC. DBA RADIOSHACK; DENE ROGERS, President and Chief Executive Officer of General Wireless, Inc. and/or General Wireless Operations, Inc.; ROBERT LAVAN, Chairman of General Wireless, Inc.; and DOES 1 through 40; inclusive, | Hearing Date: Dec. 12, 2017 at 1:00 p.m. (ET) |
| Defendants. | |

---

[1] The Debtors in these Chapter 11 cases and the last four digits of each Debtor's. tax identification number are as follows: General Wireless Operations Inc. dba RadioShack (8040); General Wireless Holdings Inc. (4262); General Wireless Inc. (9245); General Wireless Customer Service Inc. (5813).

## TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION  ............................................................................................1

II.   LEGAL ARGUMENT............................................................................................1

    A.    PLAINTIFFS HAVE DEMONSTRATED THAT CLASS
        CERTIFICATION SHOULD BE GRANTED ......................................................1

        1.    Numerosity is Satisfied ............................................................2

        2.    Commonality is Satisfied ............................................................7

        3.    Typicality is Satisfied ............................................................11

        4.    Adequacy is Satisfied............................................................12

        5.    Federal Rule of Civil Procedure 23(b)(3) is Satisfied ...............................12

    B.    DEFENDANT'S ASSERTIONS REGARDING THE ALLEGED
        WAIVER ARE FALSE AND DO NO SUPPORT DENIAL OF
        CERTIFICATION ......................................................................................14

III.  CONCLUSION............................................................................................17

# TABLE OF AUTHORITY

**CASES**                                                                                                    **PAGE**

*Alberts v. Nash Finch Co.*
   245 F.R.D. 399 (D. Minn. 2007)...................................................................................8

*Amchem Prods., Inc. v. Windsor*
   521 U.S. 591, 623 (1997)..........................................................................................12

*Austen v. Catterton Partners V, LP*
   268 F.R.D. 146, 148 (D. Conn. 2010).....................................................................10, 13

*Beck v. Maximus, Inc.*
   457 F.3d 291, 296 (3d Cir. 2004)..............................................................................11

*Bledsoe v. Emery Worldwide Airlines*
   258 F. Supp. 2d 780, 787 (S.D. Ohio 2003) .............................................................6

*Bledsoe v. Emery Worldwide Airlines, Inc.*
   635 F.3d 836 (6th Cir. 2011) ....................................................................................6

*Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n,*
   375 F.2d 648, 653 (4th Cir.1967) .........................................................................2, 4

*Davidson v. Henkel Corp.*
   302 F.R.D. 427, 436 (E.D. Mich. 2014) ................................................................3, 4

*DG ex rel. Stricklin v. Devaughn*
   594 F.3d 1188, 1198-99 (10th Cir. 2010) ...............................................................11

*Droste v. Vert Capital Corp.*
   No. 3:14-CV-467, 2015 WL 1526432 (E.D. Va. Apr. 2, 2015) .........................................2

*Eisen v. Carlisle & Jacquelin*
   417 U.S. 156, 178 (1974)............................................................................................2

*Etzelsberger v. Fisker Automotive, Inc.*
   300 F.R.D. 378, 383 (C.D. Cal. 2013) ...................................................................8, 10

*General Tel. Co. of Southwest v. Falcon*
   457 U.S. 147, 157, n.13 (1982)...................................................................................11

*In re Bill Heard Enterprises, Inc.*
   400 B.R. 795, 800 (Bankr. N.D. Ala. 2009)...............................................................5

*In re Charter Co.*
   876 F.2d 866, 877 (11th Cir. 1989) ...........................................................................14

*In re First NLC Fin. Servs, LLC*
   410 B.R. 726, 730 (Bankr. S.D. Fla. 2008)...............................................................14

# TABLE OF AUTHORITY

**CASES**                                                                                                      **PAGE**

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*
    962 F.Supp. 450, 468, 510 (D.N.J.1997 ...........................................................................3

*In re Taylor Bean & Whitaker Mortg. Corp.*
    Bankruptcy No. 3:09-bk-07047 JAF, Adversary No. 09-ap-00439 JAF
    2010 WL 4025873 (Bkrtcy. M.D. Fla. Sep. 27, 2010) ....................................................11

*Lace v. Fortis Plastics, LLC*
    295 F.R.D. 192, 200 (N.D. Ind. 2013)
    No. 3:12-CV-363 JD, 2015 WL 1383806 (N.D. Ind. Mar. 24, 2015) ...............................3

*Marcus v. BMW of N. Am., LLC*
    687 F.3d 583, 600 (3d Cir. 2012).................................................................................2, 12

*May v. Blackhawk Mining, LLC*
    319 F.R.D. 233, 237 (E.D. Ky. 2017) .........................................................................2, 3

*Miller v. Mackey Int'l.*
    452 F.2d 424, 427 (5th Cir. 1971) ..................................................................................2

*Szabo v. Bridgeport Machs., Inc.*
    249 F.3d 672, 677 (7th Cir.2001) ....................................................................................1

*Taylor Bean & Whitaker Mortgage Corp.*
    Bankruptcy No. 3:09-bk-07047 JAF, Adversary No. 09-ap-00439 JAF,
    2010 WL 4025873 (Bkrtcy. M.D. Fla. Sep. 27, 2010) .....................................................5

*Teamsters Local Union 413 v. Driver's Inc.*
    101 F.3d 1107, 1109 (6th Cir.1996) ................................................................................5

*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. 338, 359 (2011)..................................................................................................8

*Whirlpool Corp. Front–Loading Washer Prod. Liab. Litig.*
    722 F.3d 838, 851–52 (6th Cir. 2013) .........................................................................2, 5

*Young v. Fortis Plastics, LLC*
    294 F.R.D. 128 (N.D. Ind. 2013) .....................................................................................9

**STATUTES**

20 C.F.R. § 639.3 ....................................................................................................................13

*Federal Rules of Civil Procedure*, Rule 23.......................................................................... *passim*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiffs Calvin Hoskison and Eric Vanderlip ("Plaintiffs") have demonstrated that each of the elements under Federal Rules of Civil Procedure 23(a) and 23(b)(3) are satisfied. Therefore, class certification is warranted.   Defendant General Wireless Operations, Inc.'s ("Defendant" or "RadioShack") opposition to Plaintiff's Motion for Class Certification fails to show otherwise.   Instead, Defendant confuses the procedural question of certification with an inquiry on the merits of Plaintiffs' claims.   By way of example, instead of recognizing that numerosity is evaluated with respect to the number of individuals who meet Plaintiffs' proposed class definition, Defendant takes the untenable position that Plaintiffs must prove that the 50-employee threshold under the WARN Act has been met.   Such a finding need not be made in the certification context.   The 50-employee threshold is a question on the merits that Defendant remained fixated on in its fatal approach to opposition.

The Court's rigorous analysis of the facts, issues, and law ***relevant to certification*** of Plaintiffs' proposed class, the California subclass, and the Washington subclass should be followed by an order certifying the class and subclasses.   The purpose of the "rigorous analysis" is not to test the merits of the claims, but to determine whether the claims meet the requirements of certification.   *See Szabo v. Bridgeport Machs., Inc.,* 249 F.3d 672, 677 (7th Cir.2001).   Given that Plaintiffs have proven, by a preponderance of the evidence, that the elements for certification are satisfied, the Court should grant Plaintiffs' Motion in its entirety.

## II.    LEGAL ARGUMENT

### A.    PLAINTIFFS HAVE DEMONSTRATED THAT CLASS CERTIFICATION SHOULD BE GRANTED

In their submissions to the Court, Plaintiffs have shown (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.   Further, Plaintiffs have demonstrated that certification of a Rule 23(b)(3) class, and subclasses, should be granted.   ***Instead of attacking the arguments made in support thereof, Defendant proceeds - in summary-judgment-type fashion - by arguing that***

***Plaintiffs were required to prove the <u>merits</u> of their allegations in order to obtain certification.***
For instance, Defendant contends that Plaintiffs must be able to "answer whether fifty people suffered an 'employment loss' as defined by WARN."[2]  And Defendant believes that the "single site of employment" analysis under the WARN Act must already be completed, in Plaintiffs' favor, prior to certification.[3]

Defendant fails to realize that, "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178 (1974) (citing *Miller v. Mackey Int'l.*, 452 F.2d 424, 427 (5th Cir. 1971)).  The Court is to consider "only those matters relevant to deciding if the prerequisites of Rule 23 are satisfied" and "may not 'turn the class certification proceedings into a dress rehearsal for the trial on the merits.'"  *May v. Blackhawk Mining, LLC,* 319 F.R.D. 233, 237 (E.D. Ky. 2017) (citing *In re Whirlpool Corp. Front–Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 851–52 (6th Cir. 2013)).  Given that Plaintiffs have demonstrated that the prerequisites of Rule 23 are satisfied, with *actual conformance*, the Court should grant certification.

### 1. Numerosity is Satisfied.

Plaintiffs have demonstrated that the proposed class and subclasses are sufficiently numerous for class certification.  Notably, "[n]o specified number is needed to maintain a class action under Fed.R.Civ.P. 23; [rather], application of the rule is to be considered in light of the particular circumstances of the case…"  *Droste v. Vert Capital Corp.,* No. 3:14-CV-467, 2015 WL 1526432, at *4 (E.D. Va. Apr. 2, 2015) (citing *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir.1967)).  And in *Cypress*, a class of 18 was sufficient to fulfill the numerosity requirement.

---

[2] Adv. Doc. 25: General Wireless Operations, Inc.'s Opposition to Plaintiffs' Motion for Class Certification ("Defendant's Opposition"), p. 1.

[3] *Id.*

"Of course, Rule 23(a)(1) does not require a plaintiff to offer direct evidence of the exact number and identities of the class members. But in the absence of direct evidence, a plaintiff must show sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 596–97 (3d Cir. 2012). Then, the court may rely on "'common sense' to forgo precise calculations and exact numbers." *Id.* (citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450, 468, 510 (D.N.J.1997), *aff'd* *597 148 F.3d 283 (3d Cir.1998)). "A court must rely on simple common sense when determining whether a class size meets the numerosity requirement." *Lace v. Fortis Plastics, LLC*, 295 F.R.D. 192, 200 (N.D. Ind. 2013), *modified in part,* No. 3:12-CV-363 JD, 2015 WL 1383806 (N.D. Ind. Mar. 24, 2015).

Given that, during a one-week period in late May 2017 alone, Defendant closed over a thousand stores in the course of the Mass Layoff/Plant Closing,[4] numerosity is met with respect to the entire putative class. Defendant has admitted that "three to eight" employees were staffed at each store.[5] Thus, there were thousands of employees who lost their jobs – without at least 60 days' notice – in the "strange turn of events considering it was only in March that parent General Wireless Operations filed for bankruptcy protection and proposed closing only about 200 RadioShack stores." (Silverstein Decl., ¶ 18, Exh. A). Indeed, Defendant has admitted that employees who worked outside of RadioShack's Texas headquarters were not given any WARN notice. (Moroneso Decl., ¶ 6). Therefore, with membership in the class far-exceeding 40 individuals, Plaintiffs have demonstrated numerosity. *See May v. Blackhawk Mining, LLC,* 319 F.R.D. 233, 237 (E.D. Ky. 2017) (citing *Davidson v. Henkel Corp.*, 302 F.R.D. 427, 436 (E.D.

---

[4] *See* Doc. 1141-2: Declaration of Douglas N. Silverstein in Support of Plaintiffs' Motion for Class Certification ("Silverstein Decl."), ¶ 18, Exh. A.

[5] Doc. 1148-1: Declaration of Steven Moroneso in Support of General Wireless Operations, Inc.'s Opposition to Plaintiffs' Motions for Class Certification and for Class Treatment of Employee Claims, ("Moroneso Decl."), ¶ 3.

Mich. 2014) ("[t]he modern trend for meeting the numerosity factor is to require at a minimum 'between 21 and 40' class members.")).

As to the subclasses, RadioShack closed all of  its California and Washington  stores during the Mass Layoff/Plant Closing; Not a single store was left standing in either state.  Again, Defendants closed **at least** 11 stores[6] in California and **at least** 50 stores[7] in Washington.[8] Meanwhile, labor protections afforded by state law were disregarded.  Basic arithmetic and common sense weigh in favor of certification as to the Washington subclass and California subclass.  *See Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir.1967) (a class of 18 sufficient to fulfill the numerosity requirement); *see also See May v. Blackhawk Mining, LLC,* 319 F.R.D. 233, 237 (E.D. Ky. 2017) (citing *Davidson v. Henkel Corp.,* 302 F.R.D. 427, 436 (E.D. Mich. 2014) ("[t]he modern trend for meeting the numerosity factor is to require at a minimum 'between 21 and 40' class members.")).  Further, Defendant has failed to show that  that numerosity is <u>not </u>met.  Its opposition simply throws in the word "speculation" to accuse Plaintiffs of failing to meet their burden.  Plaintiffs, however, <u>did</u> submit  proof, and never so speculated.

Plaintiffs have demonstrated that the numerosity element for class certification is satisfied with respect to the proposed class, the California subclass, and the Washington subclass.  Defendant's argument to the contrary is unavailing.  Defendant contends – without citation to *any* legal authority – that "Plaintiffs must establish an employment loss for a [*sic*] least fifty people at a single site of employment to even ask the numerosity question, and even then that numerosity showing would suffice only for a class of employees at that one location."

---

[6] Doc. 1141-3: Declaration of Eric Vanderlip in Support of Plaintiffs' Motion for Class Certification ("Vanderlip Decl."), ¶ 2.

[7] Doc. 1141-1: Declaration of Calvin Hoskison in Support of Plaintiffs' Motion for Class Certification ("Hoskison Decl."), ¶ 2.

[8] These figures (11 stores; 50 stores) represent the number of locations Plaintiffs were responsible for overseeing as part of their job duties.  There are additional stores that were closed in California and Washington during the time period starting on or about March 1, 2017 through on or after May 31, 2017.

(Defendant's Opposition, pp. 12-13).    ***By framing the numerosity inquiry in this manner, Defendant places merits-showing hurdles where they do not belong.***    But this is not "a dress rehearsal for the trial on the merits."    *See In re Whirlpool Corp. Front–Loading Washer Prod. Liab. Litig.*, 722 F.3d at 851.    Thus, Plaintiffs need not "establish" any element of their WARN Act claim.

Rather, at this <u>procedural stage</u>, the issue is whether Plaintiffs can show, by a preponderance of the evidence, that a sufficiently numerous group of individuals meet their proposed class definition (and subclass definitions).[9]    The issue is <u>not</u> whether one or more of the WARN elements is/are satisfied to invoke protections under the WARN Act.    *See, e.g., Alberts v. Nash Finch Co.,* 245 F.R.D. 399 (D. Minn. 2007) (whether multiple locations constitute a single site of employment for the purpose of the WARN Act's 50-employee threshold considered to be an issue capable of resolution in a class action; no conclusion reached by the court as to this issue prior to granting of certification); *see also In re Taylor Bean & Whitaker Mortgage Corp.,* Bankruptcy No. 3:09-bk-07047 JAF, Adversary No. 09-ap-00439 JAF, 2010 WL 4025873 (Bkrtcy. M.D. Fla. Sep. 27, 2010) (class certification granted before determination on "predominant issue" in the case, "whether [debtor]'s actions violated the WARN Act."); *see also Teamsters Local Union 413 v. Driver's Inc.,* 101 F.3d 1107, 1109 (6th Cir.1996) (the question of whether multiple facilities constitute a "single site" of employment for WARN Act purposes is a question of law, not a question to be answered in the class certification context).    As in *In re Bill Heard Enterprises, Inc.*, 400 B.R. 795, 800 (Bankr. N.D. Ala. 2009), where a WARN class spread over "fourteen Chevrolet dealerships in seven states" was certified, the Court should not be led astray by Defendant's incorrect characterization of the numerosity analysis.    Simply

---

[9] The proposed class definition consists of: *All former employees of Defendants General Wireless Operations Inc. dba RadioShack, Dene Rogers, and/or Robert Lavan whose employment was terminated at any time during the period from on or about March 1, 2017 through on or after May 31, 2017 without written notice required by the Worker Adjustment and Retraining Notification Act.*    Notably, Defendant has conceded that employees who worked outside of RadioShack's Texas headquarters were not given any WARN notice. (Moroneso Decl., ¶ 6).

stated, the 50-employee threshold **merits question** does not weigh on the **class certification element** of numerosity.

Additionally, courts have consistently held that class certification should not be denied for numerosity or typicality issues where the proponent of class certification had not yet had the opportunity to conduct discovery on a "specific, merit-based issue" relating to numerosity or typicality. *See id.; see also Bledsoe v. Emery Worldwide Airlines,* 258 F. Supp. 2d 780, 787 (S.D. Ohio 2003), *aff'd sub nom. Bledsoe v. Emery Worldwide Airlines, Inc.,* 635 F.3d 836 (6th Cir. 2011). Therefore, Defendant cannot successfully argue against certification, citing the absence of a merits showing on the 50-employee threshold, all while acknowledging that specific merits discovery on the issue had yet to commence. As oft stated in the legal context, Defendant cannot have its cake and eat it, too. In sum, Plaintiffs have demonstrated the class certification element of numerosity. The legal analyses Defendant attempts to invoke in the numerosity context are irrelevant to certification and should be disregarded.

In fact, the *Beldsoe* court granted class certification notwithstanding the ***same*** unresolved issues[10] Defendant raises:

> "The relevant DOL regulation states that 'a group of contiguous locations' or separate locations "within reasonable geographic proximity" can constitute a "single site," but that "[n]on-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site." 20 C.F.R. § 639.3(i). The questions raised, therefore, are two: (1) is it true that some of the individuals contemplated in the Plaintiffs' action did not work at the same site as the other putative class members, and, if so, (2) how, if at all, does that fact affect the right of those individuals to take part in this litigation? Because the Plaintiffs have not yet had opportunity to respond to this new issue, the Court will hold off on addressing it further. However, before the Plaintiffs seek any such leave to amend their Complaint to re-define their putative class, the Court believes that these questions of fact should be addressed, and it will schedule a conference call to establish the steps to be taken in furtherance of this aim.

---

[10] "Plaintiffs must establish an employment loss for a [*sic*] least fifty people at a single site of employment to even ask the numerosity question, and even then that numerosity showing would suffice only for a class of employees at that one location." (Defendant's Opposition, pp. 12-13).

<u>For the time being, it is enough to note that the Court agrees with the parties that class certification is appropriate, but that the scope of the class must be left for subsequent determination."</u> *Id.* at 800-01 (emphasis added).

Here, too, class certification is appropriate even in the absence of a finding that Plaintiffs worked at a single site where at least 50 employees were terminated in the Mass Layoff/Plant Closing. Additionally, class certification is not precluded in the absence of a finding that Plaintiffs worked at the same single site(s) as the other putative class members.

However, to the extent the Court wishes to engage in an analysis of whether a WARN event occurred at a single site of employment, pertinent facts are already before it. Plaintiffs contend that aggregation of store locations gives rise to a "single site of employment" under the WARN Act. Because staff and equipment was shared among RadioShack locations, the "aggregation" principle applies. In support of aggregation, Plaintiffs have attested: "On a daily or almost daily basis, employees at RadioShack stores were shuffled around to work at different locations. Inventory was also shared and often moved from store to store." (Valderlip Decl., ¶ 16; Hoskison Decl., ¶ 16). Further, Defendant itself has admitted that "employees (including part time employees) would occasionally volunteer for open shifts at other stores, ***or be asked to cover an open shift at another store, as is common in the retail industry.***" (Moroneso Decl., ¶ 6) (emphasis added). Contrary to Defendant's assertions, there is evidence supporting aggregation under the single site WARN analysis.

In this certification context, Plaintiffs have met their burden of demonstrating numerosity. Therefore, the Court should find that the class, California subclass, and Washington subclass are each sufficiently numerous such that joinder is impracticable.

### 2. Commonality is Satisfied.

Plaintiffs have demonstrated that the commonality prong for class certification is satisfied. As with its arguments relating to numerosity, Defendant's opposition raises red herrings that have no bearing on commonality in this procedural context. <u>Pages 6 through 11 of the opposition consists almost exclusively of WARN merits arguments</u>. Again, the question here is not whether one or more of the WARN elements is/are satisfied to invoke protections under

the WARN Act.  The issue is whether commonality is met – and Plaintiffs have shown it is.

Federal Rule of Civil Procedure 23(a)(2) requires that there be questions of law or fact common to the class.  However, Rule 23(a)(2) does not require that all questions of law or all questions of fact be common to all class members.  *See, e.g., Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 359 (2011) ("We quite agree that for purposes of Rule 23(a)(2) "'[e]ven a single [common] question'" will do.") (internal citations omitted).  The plain language of Rule 23, and of judicial decisions discussing commonality, state that the commonality element is evaluated with respect to ***questions of*** law or fact.  Commonality does not depend on whether WARN elements are <u>actually satisfied</u> with respect to each member of the putative class.  Thus, as is clear, Defendant took the wrong approach.

Defendant's opposition relies on the fallacy that common questions of law or fact must already be answered the same way for all putative class members in order to satisfy commonality.  For instance, Defendant believes that Plaintiffs must have "demonstrate[d] that their own sites of employment qualify for WARN" in order to "establish commonality between their own claims and the claims of any putative class member whose RadioShack employment site did qualify for WARN."  (Defendant's Opposition, pp. 9-10).  By way of another example, Defendant claims that certification should not be granted where "Plaintiffs have not submitted *any* evidence supporting that any employee was employed at a RadioShack location with fifty or more employees . . ."  (Defendant's Opposition, p. 11).  As discussed above, these merits determinations need not be made prior to certification.

All that is required to prove commonality is the existence of a question – one common question of law or fact.  *See, e.g., Dukes,* 564 U.S. at 359.  For instance, whether multiple locations constitute a single site of employment for the purpose of the WARN Act's 50-employee threshold has been characterized as a common question appropriate for adjudication in a class action.  *See Alberts v. Nash Finch Co.,* 245 F.R.D. 399 (D. Minn. 2007).  Even the question of whether the defendant is considered a "covered employer" under the WARN Act constitutes a common question giving rise to certification.  *Etzelsberger v. Fisker Automotive,*

*Inc.,* 300 F.R.D. 378, 383 (C.D. Cal. 2013). Defendant's assertions that Plaintiffs must have proven certain elements of their WARN Act claim, such as the 50-employee threshold or aggregation for a single site, miss the point, and misconceive the "commonality" inquiry.

Defendant's use of legal authority is unhelpful to its position. Defendant cites to *Young v. Fortis Plastics, LLC,* 294 F.R.D. 128 (N.D. Ind. 2013) and argues that certification was granted because "there was a clear event and location covered by WARN," which is purportedly "not the case here." (Defendant's Opposition, p. 10). But that was not the case in *Young*. The court did not make any such findings regarding an event and location actually covered by WARN. Rather, in its commonality discussion, the court in *Young* <u>explicitly acknowledged</u> that the "question of whether that event [*i.e.,* 'single large employment event that affects a number of individual employees'] implicates the protections of the WARN Act" is "common to the Proposed Class." *Id.* at 136. Here, too, whether the alleged Mass Layoff/Plant Closing implicated the protections of the WARN Act is a common question. And to the extent Defendant continues to ignore this common question, instead insisting on proof of "a clear event and location covered by WARN," it should recognize that the *Young* court viewed these issues as common questions to be resolved <u>post-certification</u>, and after determining the identity of the employer in *Young*:

> "On November 9, 2012, Mr. Young filed a First Amended Class Action Complaint in which he added Monomoy as a defendant and alleged that Fortis and Monomoy served as the 'single employer' of Mr. Young and the others working at the Fort Smith Facility." *Id.* at 132.

> ". . . the question of the relationship between Fortis and Monomoy, which is central to Mr. Young's Amended Complaint, is common to the Proposed Class. Accordingly, the requirement of commonality is established with respect to the Proposed Class." *Id.* at 136.

> "***Once it is determined who employed Mr. Young and the other employees at the Fort Smith Facility, the fired employees must also establish*** that the employer is covered by the WARN Act by having the requisite number of employees, 29 U.S.C. § 2101(a)(1), ***that a plant closing or mass layoff occurred***, § 2101(a)(2)-(3), and that the required notice was not provided to the employees, § 2102(a). ***The WARN Act indicates that class treatment may be appropriate in this type of litigation***, providing that a person may sue "for other persons similarly situated." § 2104(a)(5)." *Id.* at 134 (emphasis added).

9

Therefore, *Young* shows that the common questions of law and fact presented by Plaintiffs are sufficient to prove that the commonality element for certification is met. *Young* also shows that these common questions need not be answered prior to the granting of certification.

Further, Defendant has distorted *Etzelsberger v. Fisker Automotive, Inc.,* 300 F.R.D. 378 (C.D. Cal. 2013) – a case supporting class certification – in an attempt to use it to its favor. Defendant seeks to show a "clear event and location covered by WARN" in *Fisker Automotive*. Defendant states that, in *Fisker Automotive*, "the plaintiffs alleged that there were employment losses for at least 50 of the defendant's employees at one facility (the Anaheim facility)." (Defendant's Opposition, p. 10). But the *Fisker Automotive* opinion <u>repeatedly</u> makes clear that the former employees the plaintiff sought to represent worked at several different facilities, not only in Anaheim. *See id.* at 381. Further, nowhere in *Fisker Automotive* is there any indication that 50 or more putative class members worked at the Anaheim facility. As such, *Fisker Automotive* does not prove the point Defendant so desperately seeks to make.

In fact, in *Fisker Automotive*, the court found the commonality requirement satisfied based merely on: (1) allegations of WARN Act violations, and (2) the plaintiff's declaration. *See id.* The declaration stated that "[e]ach class member was allegedly terminated without cause, without notice, and without compensation as part of the massive layoffs and plant closings occurring around April 5, 2013, in violation of the WARN Acts." *Id.* at 383. Here, Plaintiffs have submitted similar statements in their declarations. (Hoskison Decl., ¶¶ 3-6; Vanderlip Decl., ¶¶ 3-6). Therefore, the Court should find that common questions of law and fact exist.

In weighing commonality, the Court should disregard the "framework" proffered by Defendant. The Court in *Austen v. Catterton Partners V, LP,* 268 F.R.D. 146, 148 (D. Conn. 2010) found that the "Plaintiffs have not yet met their burden of showing, by a preponderance of the evidence, that common questions predominate over individualized ones, at least with respect to the remote employees." The predominance inquiry under Rule 23(b)(3) is an inquiry separate from the commonality inquiry. As such, *Austen* is inapposite here.

In this certification context, Plaintiffs have met their burden of demonstrating commonality. Therefore, the Court should find that the class, California subclass, and Washington subclass each have common questions of law or fact.

### 3. Typicality is Satisfied.

Defendant has failed to meaningfully oppose Plaintiffs' typicality arguments. Instead of addressing typicality, Defendant raises the issue of "whether Plaintiffs, and any other putative class members, were part of a mass layoff or plant closing covered by WARN." (Defendant's Opposition, p. 13). As discussed above, this is a merits issue reserved for resolution post-certification.

Typicality is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality and commonality elements for class certification tend to merge. *See General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157, n.13 (1982). As with commonality, factual differences do not defeat typicality if the course of conduct and the claims are based on the same legal theory. *DG ex rel. Stricklin v. Devaughn,* 594 F.3d 1188, 1198-99 (10th Cir. 2010); *see also Beck v. Maximus, Inc.,* 457 F.3d 291, 296 (3d Cir. 2004). The legal theories of WARN Act violations, and related violations of state labor laws, are sufficient to satisfy typicality. *See In re Taylor Bean & Whitaker Mortg. Corp.* Bankruptcy No. 3:09-bk-07047 JAF, Adversary No. 09-ap-00439 JAF, 2010 WL 4025873 (Bkrtcy. M.D. Fla. Sep. 27, 2010) ("alleged failure to comply with the requirements of the WARN Act represents a single course of conduct with regard to each potential class member . . . thus, the facts surrounding Plaintiffs' claims and the legal theories upon which Plaintiffs' actions are grounded are typical of the entire class.") Plaintiffs allege that notice as required by the WARN Act was not provided in the course of the Mass Layoff/Plant Closing. Defendant only ever attempted notice to employees at its headquarters in Texas. Thus, Plaintiffs' claims are typical of the putative class.

Plaintiffs further allege that, in relation to the Mass Layoff/Plant Closing, Defendants violated state labor laws. Therefore, Defendants' course of conduct gives rise to typicality as to

the Washington subclass and California subclass.

In this certification context, Plaintiffs have met their burden of demonstrating typicality. Therefore, the Court should find that Plaintiffs' claims are typical of the class; Plaintiff Hoskison's claims are typical of the Washington subclass, and Plaintiff Vanderlip's claims are typical of the California subclass.

### 4.   Adequacy is Satisfied.

Similarly, Plaintiffs have demonstrated adequacy.   In opposition, Defendant simply argues that "Plaintiffs' lack of typicality demonstrates their inadequacy as class representatives." (Defendant's Opposition, p. 14).   Defendant improperly seeks a merits-showing that Plaintiffs experienced an employment loss covered by WARN. This same   misplaced thread runs throughout its opposition.

Additionally, Defendant cites purported authority suggesting that adequacy is not met here because Plaintiffs may be "preoccupied with defenses unique to" them.   *Id.*   But Defendant never develops such an argument.

In this certification context, Plaintiffs have met their burden of demonstrating adequacy of representation.   Therefore, the Court should find that Plaintiffs and their counsel are adequate to represent the class and subclasses.

### 5.   Federal Rule of Civil Procedure 23(b)(3) is Satisfied.

As with the elements of certification under Rule 23(a), Plaintiffs have proven by a preponderance of the evidence that Rule 23(b)(3) is satisfied.   Plaintiffs have demonstrated that their claims are "capable of proof at trial through evidence that is common to the class rather than individual to its members."   *Marcus v. BMW of N. Am., LLC,* 687 F.3d 583, 600 (3d Cir. 2012).   Again, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."   *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997).   But Defendant contends that a merits determination must be made.

The Rule 23(b)(3) inquiry does not depend on whether Plaintiffs have "demonstrated the

threshold issue that at least fifty people suffered an employment loss at a single site of employment to implicate the WARN Act." (Defendant's Opposition, p. 15). And even if it did, there is already evidence before the Court on this point that is <u>common to the class</u> rather than <u>individual to its members</u>. A single site of employment can refer to either a single location or a group of contiguous locations. 20 C.F.R. § 639.3(i). A group of locations sharing the same staff can be considered a single site. *Id.* Defendant submits that it is "common in the retail industry" to have employees work at multiple sites, and that, in fact, RadioShack employees have been asked to work shifts at "another store." (Moroneso Decl., ¶ 6). The Declaration of Steve Moroneso is evidence common to the class that supports Plaintiffs' aggregation argument. Plaintiffs' declarations are also evidence common to the class that supports aggregation. (Valderlip Decl., ¶ 16; Hoskison Decl., ¶ 16). The parties and the Court can also reference employment records common to the class, such as work schedules, to identify aggregation. Neither speculation nor individualized inquiries are necessary here.

Defendant seems to rely on *Austen v. Catterton Partners V, LP,* 268 F.R.D. 146, 148 (D. Conn. 2010) in support of its argument that Plaintiffs must show, before certification, that RadioShack locations can be aggregated into a "single site of employment" for WARN Act purposes. (Defendant's Opposition, pp. 10-11, 15). However, the facts present in this case are distinguishable from those in *Austen.* The court in *Austen* denied certification "for now," and noted that it "may very well certify the proposed class in the future, after Plaintiffs have had a chance to conduct discovery to determine whether individualized inquiries will be necessary for the remote employees, or whether their WARN Act claims can be resolved with more generalized proof. *Id.* at 153. Here, there is already evidence before the Court that common proof will aid in the resolution of Plaintiffs' and the other class members' claims. By contrast, the proponent of certification in *Austen* based their argument "on conjecture about what the evidence *may* show." *Id.* at 152. Therefore, predominance is not an issue precluding certification in this case as it did in *Austen.*

Likewise, Defendant's argument against superiority fails. In fact, Defendant could not

cite a single source of legal authority to support its opposition on this point.  Still, Defendant contends that "the proof of claim process provides a superior means for adjudicating the claims of any individual, including Plaintiffs, who asserts that he or she did not receive a required WARN notice." (Defendant's Opposition, p. 16).  Defendant does not address legal authority to the contrary, because it cannot.   The "resolution of the WARN Act claims will be expedited and handled more efficiently in a class adversary proceeding because the claims will be handled collectively rather than in a piece meal fashion." *In re First NLC Fin. Servs, LLC,* 410 B.R. 726, 730 (Bankr. S.D. Fla. 2008); *see also In re Charter Co.,* 876 F.2d 866, 877 (11th Cir. 1989) (holding that an adversary proceeding is necessary to protect the employees' rights, given the relatively small nature of their individual claims).   As such, Plaintiffs have demonstrated that Rule 23(b)(3) is satisfied.

### B.    DEFENDANT'S ASSERTIONS REGARDING THE ALLEGED WAIVER ARE FALSE AND DO NOT SUPPORT DENIAL OF CERTIFICATION

For the first time, Defendant claims that the amounts offered in the "Separation Bonus Agreement and Release" (the "Alleged Waiver") did not include "compensation that Plaintiffs had already earned or were otherwise entitled to." (Defendant's Opposition, p. 18).  Defendant continues by submitting, through declaration, that "[i]t was not RadioShack's policy to premise the payment of any earned compensation upon the Plaintiffs' signing of the Agreements." *Id.* These positions cannot be reconciled with the language of: (1) the Alleged Waiver, (2) the message in the body of the email sending employees a link to review and sign the Alleged Waiver, or (3) an email sent by "benefits@radioshack.com" explaining the criteria employed in calculating the amounts offered in the Alleged Waiver.

The Alleged Waiver[11] begins with the following recitals:

> "WHEREAS, GENERAL WIRELESS has offered to pay bonuses to certain employees who remained employed through their separation date and performed certain duties in connection with the store closings; and

---

[11] Exhibit A to Valderlip Decl. and Hoskison Decl.

> "WHEREAS, GENERAL WIRELESS has determined to pay a bonus to those employees who substantially complied with the offer, contingent upon execution of this Agreement;"

This language indicates that, by the time RadioShack put together the Alleged Waiver, Plaintiffs and other former employees *had already earned compensation* by remaining employed and performing certain duties in connection with store closings. Further, the cited language makes clear that RadioShack conditioned the payment of such earned compensation on employees' execution of the Alleged Waiver. As such, the statements in the Moroneso Declaration are highly questionable.

The message in the body of the email sending employees a link to review and sign the Alleged Waiver further demonstrates the inaccuracies of the facts put forward by Defendant.[12] The message states:

> "Attached please find the SEPARATION BONUS AGREEMENT AND RELEASE for your review and execution in connection with final [*sic*] the store closing bonus and fixture incentive compensation. We have reviewed employee compliance with the store closing checklist, including, but not limited to: the proper return of keys and company assets, compliance with company and labor policies and overall inventory management. Decisions are final, but if you have any questions, please contact benefits@radioshack.com.
>
> Please submit your signature to the Agreement on or before June 22, 2017.
>
> Sincerely,
>
> General Wireless Operations Inc. Management Team" *Id.*

Again, the language demonstrates that separation bonus offered consisted of earned compensation. Plaintiffs and other class members earned certain amounts for closing stores and selling fixtures under an incentive program. Defendant acknowledged such earned compensation after "review[ing] employee compliance." Therefore, the basis for Defendant's new position that the separation bonus was "additional compensation offered in exchange for the consideration

---

[12] *See* Supplemental Declaration of Eric Vanderlip in Support of Plaintiffs' Motion for Class Certification ("Supp. Vanderlip Decl."), ¶ 1, Exh. A; Supplemental Declaration of Calvin Hoskison in Support of Plaintiffs' Motion for Class Certification ("Supp. Hoskison Decl."), ¶ 1, Exh. A.

provided in the Agreement – not compensation that Plaintiffs had already earned or were otherwise entitled to" is entirely unclear.  (Defendant's Opposition, p. 18).

Further, an email sent by "benefits@radioshack.com" explaining the criteria employed in calculating the amounts offered in the Alleged Waiver <u>confirms</u> that earned compensation is at-issue, not additional compensation in exchange for signing the Alleged Waiver.  (Supp. Vanderlip Decl., ¶ 3, Exh. B).  The email lays out several factors that weighed on the separation bonus calculation.  For instance, "Compliance with Company Labor Policies" was a factor in determining bonus amounts: "Employees were expected to monitor store budgets, overtime percentages, and PTO compliance in accordance with Company policy and instructions.  ***If an employee failed to follow two (2) or more of these policies or instructions the closing bonus was reduced by 50%.***"  *Id.* (emphasis added).  Clearly, the bonuses offered in the Alleged Waiver constituted earned compensation.  Execution of the Alleged Waiver was not listed in the criteria for calculating bonuses; RadioShack merely tacked on assent to a broad release as a condition to receipt of compensation that was already earned.   Indeed, the email sent by "benefits@radioshack.com" concludes with the following statement:

> "**As previously stated, it is critical you sign and return your SEPARATION BONUS AGREEMENT AND RELEASE no later than Friday, June 23, 2017, as bonus payments cannot be processed after that date.   Failure to sign and return the SEPARATION BONUS AGREEMENT AND RELEASE by that date may result in forfeiture of bonus.**"  *Id.*

A "forfeiture" cannot occur as to a sum that an individual has absolutely no property interest in. The only conclusion that can be drawn from Defendant's statements is that the separation bonus consisted exclusively of sums to which Plaintiffs and other class members were already entitled. Further, it does not logically follow to state that "additional compensation offered in exchange for the consideration provided in the Agreement" would be forfeited by failure to sign the Alleged Waiver.  Under this theory, no entitlement to a separation bonus would arise until *after* execution of the Alleged Waiver.

Given that Defendant's single course of conduct as to each class and subclass member involved the (1) failure to provide layoff notice and (2) withholding of earned compensation unless and until employees signed the Alleged Waiver, Plaintiffs have satisfied Rule 23(a) and Rule 23(b)(3).  Contrary to Defendant's assertions in opposition, there are no individualized inquiries, such as that of "individualized performance as affecting compensation," that preclude certification.  (Defendant's Opposition, p. 18).  Defendant has violated federal and applicable state laws in a rather uniform manner with respect to the class and each subclass.  For instance, Defendant unlawfully withheld earned compensation and required assent to the Alleged Waiver as a condition to receipt of such compensation.  Defendant also systematically failed to pay vacation wages.[13]  Therefore, certification of the class, California subclass, and Washington subclass is warranted and should be granted.

## III.   <u>CONCLUSION</u>

For the reasons discussed herein and in Plaintiffs' Opening Brief in Support of Motion for Class Certification, the Court should grant Plaintiffs' Motion for Class Certification in its entirety.

Respectfully submitted,

DATED: November 17, 2017

KESLUK, SILVERSTEIN, & JACOB, PC
Douglas N. Silverstein [Cal. SBN 181957]
Mia Munro [Cal. SBN 281387]
9255 Sunset Blvd., Suite 411
Los Angeles, California 90069-3309
Telephone: (310) 273-3180
Facsimile: (310) 273-6137
Dsilverstein@californialawattorney.com
Mmunro@californialaborlawattorney.com

---

[13] In opposition, Defendant contends that its vacation policies are lawful, thus precluding certification. However, the mere existence of a facially valid policy (which Plaintiffs do not concede exists), does not defeat class certification.  *See Boyd v. Bank of Am. Corp.,* 300 F.R.D. 431, 442 (C.D. Cal. 2014).

*/s/ Julia Klein*
KLEIN, LLC
Julia B. Klein (DE 5198)
919 North Market Street, Suite 600
Wilmington, Delaware 19801
Telephone: (302) 438-0456
Email: klein@kleinllc.com


- and -


BARNESS & BARNESS LLP
Daniel I. Bamess [Cal. SBN 104203]
11377 W. Olympic Blvd., 2nd Floor
Los Angeles, CA 90064
Telephone: (310) 594-3011
Facsimile: (310) 473-8700
Daniel@BarnessLaw.com

*Attorneys for Plaintiffs and the Putative Class*